UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

TRUSTEES OF THE NEW YORK CITY : 
DISTRICT COUNCIL OF CARPENTERS : 
PENSION FUND, WELFARE FUND, ANNUITY : 
FUND, and APPRENTICESHIP, JOURNEYMAN : 
RETRAINING, EDUCATIONAL AND : 
INDUSTRY FUND, TRUSTEES OF THE NEW : 
YORK CITY CARPENTERS RELIEF AND : 
CHARITY FUND, THE CARPENTER : 
CONTRACTOR ALLIANCE OF : 
METROPOLITAN NEW YORK, and the NEW : 
YORK CITY DISTRICT COUNCIL OF : 
CARPENTERS, : 
 : 
Petitioners, : 
 : 
-against- : 
 : 
ECLIPSE CONSTRUCTION SERVICES INC., : 
 : 
Respondent. : 
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/26/2021

1:21-cv-7868-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

Respondent Eclipse Construction Services Inc. ("Eclipse") violated its collective bargaining agreements by failing to submit to an audit request. Pursuant to Section 301 of the Labor Management Relations Act, Petitioners seek to confirm an arbitration award obtained against Eclipse. Because Petitioners have demonstrated that the arbitration proceeding was conducted in accordance with the parties' agreements, and was based on undisputed evidence, the Court confirms the award.

I.      BACKGROUND

Petitioners Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund, Trustees of the New York City Carpenters Relief and Charity Fund, the Carpenter Contractor

Alliance of Metropolitan New York (the "Funds"), and the New York City District Council of Carpenters (the "Union") seek to confirm an arbitration award pursuant to their collective bargaining agreements with Eclipse.

The Trustees of the New York City District Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educational and Industry Fund "are employer and employee trustees of multiemployer labor-management trust funds organized and operated in accordance with the Employee Retirement Income Security Act ("ERISA")." Dkt. No. 13 ("Davidian Decl.") ¶ 4. They are based in New York City. *Id.* The Trustees of the New York City Carpenters Relief and Charity Fund operate "a charitable organization established under section 501(c)(3) of the Internal Revenue Code." *Id.* ¶ 5. The fund is based in New York City. *Id.* "The Carpenter Contractor Alliance of Metropolitan New York is a labor management corporation operating pursuant to Section 302(c)(9) of the LMRA[.]" *Id.* ¶ 6. The Union "is a labor organization . . . and is the certified bargaining representative for certain employees of Eclipse." *Id.* ¶ 7.

Eclipse is a member of The Association of Wall-Ceiling & Carpentries Industries of New York, Inc. (the "WCC"). *Id.* ¶ 8. As a WCC member, Eclipse is a party to the WCC's collective bargaining agreements with the Union. *Id.* ¶ 9; *see* Dkt. Nos. 13-2 ("CBA 1"), 13-3 ("CBA 2," and, together with CBA 1, the "CBAs"). CBA 1 extended from July 1, 2011, to June 30, 2017, and included an "evergreen clause." *See* Davidian Decl. ¶¶ 9–10. Under the evergreen clause, CBA 1 was "renewed automatically for one year intervals [after June 30, 2017] unless written notice [was] given to renegotiate, modify, or amend the CBA." *Id.* ¶ 10 (internal quotation marks omitted) (quoting CBA 1 art. XX). Neither Eclipse nor the Union ever provided such notice. *Id.* ¶ 11. The Union and WCC agreed upon CBA 2 for the period of July 1, 2017, through June 30, 2024. *Id.* ¶ 12;

*see generally* CBA 2. The parties' relationship was governed by a collective bargaining agreement at all times relevant to this action. Davidian Decl. ¶ 14.

The CBAs require employers to "make contributions for each hour worked of all Employees covered by [the] Agreement" to the Funds. *See* CBA 1 art. XVI, § 1; CBA 2 art. XVII, § 1. In order to verify that employers like Eclipse make their agreed upon contributions, the CBAs provide that, "[e]ach Employer's books and payroll records . . . shall be made available upon demand of the Trustees at all reasonable business hours" for reviews and audits. CBA 1 art. XVI, § 1(a); CBA 2 art. XVII, § 1(a).

"The CBAs . . . bind[] employers to the policies and regulations adopted by the Funds' Trustees." Davidian Decl. ¶ 17; *see* CBA 1 art. XVI, § 6; CBA 2 art. XVII, § 5. Among the Funds' policies is a Revised Statement of Policy for Collection of Employer Contributions (the "Collection Policy"). Dkt. No. 13-5. The Collection Policy establishes the consequences for when an employer violates the CBAs' auditing provisions. *Id.* at 6–7. "In the event that an employer refuses to permit a payroll review and/or audit upon request . . . . the Fund Office shall determine the estimated amount of the employer's delinquent contributions based on the assumption that the employer's weekly hours subject to contributions for each week of the requested audit period are the highest number of average hours reported per week for any period of four consecutive weeks during the audit period." *Id.* Such determinations "constitute presumptive evidence of delinquency." *Id.* at 7.

Petitioners requested an audit pursuant to the terms of the CBAs and the Collection Policy for the period from June 24, 2017, to the time of the request. Davidian Decl. ¶ 27. Despite this request, Eclipse "failed to provide its books and records for the purposes of conducting the Audit." *Id.* ¶ 28. This triggered the Collection Policy's provision regarding denied audits, and the Funds thereafter estimated that the presumptively missing contributions were equal to $131,019.63. *Id.* ¶ 29. Petitioners then initiated arbitration pursuant to the CBAs' arbitration clauses, under which

3

the arbitrator has "full and complete authority to decide any and all issues raised . . . and to fashion

an appropriate remedy . . . including . . . monetary damages."  CBA 1 art. XVI, § 12(a); CBA 2 art.

XVII, § 11(a).

      The CBAs and the Collection Policy provide that in the event that the Funds are "required

to arbitrate a dispute or file a lawsuit against an employer to recover unpaid contributions," the

Funds are entitled to collect more than the late contributions alone.  Davidian Decl. ¶ 22.

According to the Collection Policy, in addition to interest on the delinquent amount, the Funds are

entitled to a "delinquency assessment."  Collection Policy at 8.  "The amount of the delinquency

assessment shall be the greater of (a) interest on the delinquent contributions . . . or (b) liquidated

damages in the amount of twenty percent (20%) of all delinquent contributions."  *Id.*  The "[i]nterest

owed by a delinquent employer" is "calculated at the prime lending rate of Citibank plus 200 basis

points, compounded daily, on a declining principal basis."  *Id.*  In addition, the Collection Policy

mandates that delinquent employers are liable for all attorneys' fees incurred by the Funds when

trying to collect delinquent contributions.  *Id.*  The Collection Policy also states that delinquent

employers are liable for "[a]ll recoverable costs actually incurred in court or other legal actions for

the collection of delinquent contributions."  *Id.*

      After Petitioners initiated arbitration, Roger E. Maher (the "Arbitrator") mailed Eclipse

notice of the arbitration hearing in a letter dated January 25, 2021.  *See* Dkt. No. 13-6.  The

Arbitrator conducted the hearing on April 8, 2021, at which Eclipse did not make an appearance.

Dkt. No. 13-7 ("Award") at 1–2.  In an April 10, 2021 decision, the Arbitrator determined that

Eclipse violated the CBAs by refusing Petitioners' audit request, and awarded the Funds

$180,957.56.  *Id.* at 3.  In addition to the estimated principal amount of $130,019.63, the Arbitrator

awarded $20,834 in interest, $26,203.93 in liquidated damages, $400 in court costs, $1,500 in

attorneys' fees, and a $1,000 arbitrator's fee.  *Id.*  Finally, the Arbitrator determined that 5.25% interest would accrue on the award from the time it was issued.  *Id.*

Eclipse has not yet paid any of this award.  *See* Davidian Decl. ¶ 34.  Petitioners ask the Court to confirm the award, updated in light of additional accrued interest, court costs, and attorneys' fees.  Dkt. No. 14-2 ("Proposed J.").  Petitioners propose that the award should reflect (a) $180,957.56—the original award—plus interest accrued at an annual rate of 5.25% since the award date; (b) $84.63 in costs from the proceedings; (c) $2,532 in attorneys' fees; and (d) post-judgment interest at the statutory rate for civil awards under 28 U.S.C. § 1961.  *Id.* at 1.

The requested attorneys' fees are based on 10 hours of work.  Dkt. No. 14 ("Grancio Decl.") ¶ 8.  Petitioners' counsel billed at the rates of $350 per hour for work performed by a partner, $275 per hour for work performed by an associate, and $120 per hour for work performed by legal assistants.  *Id.* ¶¶ 4–6; *see also* Dkt. No. 14-1 ("History Bill for the Ct.").  The "rates are the result of negotiations between [counsel] and . . . Petitioners."  Grancio Decl. ¶ 7.  Petitioners' counsel consisted of Adrianna R. Grancio, an associate at Virginia & Ambinder LLP ("V&A"), and Nicole Marimon, a partner at V&A.  *Id.* ¶¶ 4–5.

Petitioners filed a petition to confirm the arbitration award on September 21, 2021.  Dkt. No. 1.  Petitioners moved for summary judgment on October 5, 2021.  Dkt. No. 12.  Eclipse has not entered an appearance or made any filings with the Court, despite being properly served with the complaint, motion, and all relevant filings.  *See* Dkt. Nos. 7–9.

## II.    LEGAL STANDARD

"Section 301 of the Labor Management Relations Act [('LMRA')], 29 U.S.C. § 185, provides federal courts with jurisdiction over petitions brought to confirm labor arbitration awards."  *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 88 (2d Cir. 1998).  "Confirmation of a labor arbitration award under LMRA § 301 is a summary proceeding that merely

makes what is already a final arbitration award a judgment of the Court." *N.Y. Med. Ctr. of Queens v. 1199 SEIU United Healthcare Workers East*, No. 11-cv-04421, 2012 WL 2179118, at *4 (E.D.N.Y. June 13, 2012) (internal quotation marks omitted).

The Court's review of a final arbitration award under the LMRA is "very limited." *Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir. 2016) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001)). Courts are "not authorized to review the arbitrator's decision on the merits . . . but inquire only as to whether the arbitrator acted within the scope of his authority as defined by the collective bargaining agreement." *Id.* It is not the Court's role to "decide how [it] would have conducted the arbitration proceedings, or how [it] would have resolved the dispute." *Id.* at 537. Instead, the Court's task is "simply to ensure that the arbitrator was 'even arguably construing or applying the contract and acting within the scope of his authority' and did not 'ignore the plain language of the contract.'" *Id.* (quoting *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)); *see also D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006) (noting that an arbitration award should be confirmed "if a ground for the arbitrator's decision can be inferred from the facts of the case" and that "[o]nly a barely colorable justification for the outcome reached by the arbitrator[] is necessary to confirm the award" (internal quotation marks omitted)).

Furthermore, "an arbitrator's award resolving a labor dispute is legitimate and enforceable as long as it draws its essence from the collective bargaining agreement and is not merely an exercise of the arbitrator's own brand of industrial justice." *Local 97, Int'l Bhd. of Elect. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999); *see also Harry Hoffman Printing, Inc. v. Graphic Commc'ns Int'l Union, Local 261*, 950 F.2d 95, 97 (2d Cir. 1991) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." (internal

quotation marks omitted)). "Generally speaking, unless the award is procured through fraud or dishonesty, the decision should not be disturbed." *Niagara Mohawk*, 196 F.3d at 124.

When a petition to confirm an arbitration award is unopposed, courts should generally treat "the petition and accompanying record . . . as akin to a motion for summary judgment." *Gottdiener*, 462 F.3d at 109. Thus, like unopposed summary judgment motions, unopposed confirmation petitions "must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." *Id.* at 110 (internal quotation marks omitted).

## III. DISCUSSION

The unopposed evidence submitted by Petitioners shows they are entitled to confirmation of the Award, post-judgment interest, and attorneys' fees and costs.

### A. Confirmation of the Arbitration Award

There is no reason to believe that Petitioners procured their Award through fraud or dishonesty, or that the Arbitrator disregarded the CBAs or acted outside the scope of his authority as arbitrator. Rather, the record indicates that the Arbitrator based his award on undisputed evidence that Petitioners attempted to audit Eclipse, and that Eclipse denied their audit requests in violation of the CBAs and the Collection Policy. The record also indicates that the Arbitrator based the amount of his award of principal, interest, liquidated damages, and various costs on relevant provisions in the agreements and on undisputed testimony. *See* Award at 1–3. Accordingly, the Court grants Petitioners' motion and confirms the Award, including pre-judgment interest at a rate of 5.25% per annum from the date of the award through the date of judgment in this action.

### B. Post-Judgment Interest

Petitioners further request post-judgment interest accruing from the date of judgment until Eclipse pays in full. Proposed J. at 1. Under 28 U.S.C. § 1961, "[t]he award of post-judgment interest is mandatory," *Cappiello v. ICD Publ'ns, Inc.*, 720 F.3d 109, 113 (2d Cir. 2013), and this

7

mandate applies when confirming arbitration awards. *See, e.g.*, *Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100–01 (2d Cir. 2004). Therefore, the Court grants Petitioners' request for post-judgment interest. Post-judgment interest shall accrue at the statutory rate from the date judgment is entered until payment is made in full.

### C. Attorneys' Fees and Costs of Bringing this Petition

Petitioners also seek to recover reasonable attorneys' fees and costs incurred by bringing this petition. Proposed J. at 1. "[I]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." *Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp.*, 774 F.2d 43, 47 (2d Cir. 1985). Section 301 of the LMRA does not provide for recovery of attorneys' fees. *See id.* "Nevertheless, because a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith, attorney's fees and costs may be proper when a party opposing confirmation of an arbitration award refuses to abide by an arbitrator's decision without justification." *Abondolo v. H. & M.S. Meat Corp.*, No. 07 Civ. 3870, 2008 WL 2047612, at *4 (S.D.N.Y. May 12, 2008) (internal quotation marks omitted) (quoting *N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc.*, No. 03 Civ. 5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003)).

"A party's failure to comply immediately with an arbitration award does not necessarily warrant an award of attorney's fees." *Id.* But courts have found such an award permissible where "the party challenging the award has refuse[d] to abide by an arbitrator's decision without justification." *First Nat'l Supermarkets, Inc., v. Retail, Wholesale & Chain Store Food Emps. Union, Local 338*, 118 F.3d 893, 898 (2d Cir. 1997); *see also Ceona PTE Ltd. v. BMT Giant, S.A. De C.V.*, No. 16-cv-4437, 2016 WL 6094126, at *3 (S.D.N.Y. Oct. 19, 2016) (awarding attorneys' fees and costs to petitioner seeking confirmation of an arbitration award where the respondent "failed to satisfy the Final Award, and has not responded to [the petitioner's] petition in this action"); *Herrenknecht Corp. v.*

*Best Road Boring*, No. 06 Civ. 5106, 2007 WL 1149122, at *4 (S.D.N.Y. Apr. 16, 2007) (awarding

attorneys' fees and costs to petitioner in unopposed petition to confirm an arbitration award where

respondent "offered no justification for refusing to comply with the decision of the arbitrator").

      Here, an award of attorneys' fees and costs is justified.  By entering into the CBAs, Eclipse

agreed to submit all disputes to binding arbitration.  Further, both the CBAs and the Funds'

Collection Policy explicitly entitle Petitioners to recover attorneys' fees incurred while "enforcing the

Board of Trustees' rights to payroll reviews and/or audits." [1]  Collection Policy at 8; *see* CBA 1 art.

XVI, § 11; CBA 2 art. XVII, § 10.  Respondent has neither complied with the Award nor provided

any justification for its failure to do so.  For these reasons, the Court finds that it is just and

reasonable to award Petitioners reasonable attorneys' fees and costs pursuant to bringing this action.

      To calculate reasonable attorneys' fees, "district courts use the lodestar method—hours

reasonably expended multiplied by a reasonable hourly rate." *McDonald ex rel. Prendergast v. Pension

Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006).  "A reasonable hourly rate is a

rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably

comparable skill, expertise and reputation.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11

(1984)).  "[I]t is within the Court's discretion to reduce the requested rate" when the Court finds the

rate unreasonable in the relevant market.  *Trs. of Mason Tenders Dist. Council Welfare Fund, Pension Fund,

Annuity Fund & Training Program Fund v. Stevenson Contracting Corp.*, No. 05 Civ. 5546, 2008 WL

3155122, at *9 (S.D.N.Y. June 19, 2008) (citing *Savino v. Comput. Credit, Inc.*, 164 F.3d 81, 87 (2d Cir.

1998)), *report and recommendation adopted*, No. 05-cv-5546, 2008 WL 2940517 (S.D.N.Y. July 29, 2008).

To assist the Court in determining the appropriate award, "[a]pplications for fee awards should

---

[1] Courts have also awarded attorneys' fees when there is a contractual basis for doing so.  *See New York City Dist. Council of Carpenters Pension Fund v. Dafna Const. Co.*, 438 F. Supp. 2d 238, 242 (S.D.N.Y. 2006) (awarding attorneys' fees in confirming an arbitration award "because the Agreement itself require[d] [respondent] to pay attorneys' fees incurred by the Trustees in seeking confirmation").

generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983)). "Hours that are 'excessive, redundant, or otherwise unnecessary,' are to be excluded" from the calculation of a reasonable fee. *Id.* (quoting *Hensley*, 461 U.S. at 434).

Petitioners' request is reasonable. Petitioners request $2,532 in attorneys' fees and $84.63 in costs incurred by bringing this petition. *See* Proposed J. at 1; Grancio Decl. ¶¶ 8–9. Petitioners submitted invoices documenting the specific tasks performed, the number of hours worked in total (10), and hourly rates for the two attorneys and the legal assistant who worked on the case. *See* History Bill for the Ct. These are satisfactory records of the attorneys' efforts and sufficiently set forth the specific fees and costs incurred while seeking confirmation of the award. *See id.* Furthermore, these fees and costs "are the result of negotiations between [Petitioners' attorneys] and the Petitioners regarding the proper hourly rates" for these legal services. Grancio Decl. ¶ 7. The Court also concludes that 10 hours is a reasonable number of hours worked given the description of the tasks performed.

The fees are based on the following rates: $350 per hour for Ms. Marimon, a partner at the firm who graduated from law school in 2014; $275 per hour for Ms. Grancio, an associate who graduated from law school in 2016; and $120 per hour for the legal assistant. *See id.* ¶¶ 4–6; History Bill for the Ct. Ms. Marimon's rate is reasonable given her previous experience "hand[ling] the prosecution of several ERISA collection actions" and her status as a partner of the firm. *Id.* ¶ 5; *see N.Y. Dist. Council of Carpenters Pension Fund v. Perimeter Interiors*, 657 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (noting that the rate of $425 per hour for partners in 2009 was a reasonable rate commensurate with the costs of similar work in the district for LMRA cases); *Watkins v. Smith*, No. 12-cv-4635, 2015 WL 476867, at *3 (S.D.N.Y. Feb. 5, 2015) ("In the Southern District of New

York, fee rates for experienced attorneys in small firms generally range from $250 to $450 in civil cases."). The requested rate of $120 per hour for the work performed by legal assistants is also reasonable. *See, e.g.*, *Rosales v. Gerasimos Enters., Inc.*, No. 16-CV-2278, 2018 WL 286105, at *2 (S.D.N.Y. Jan. 18, 2018) (noting that hourly rates of between $100 and $150 have been found to be reasonable for paralegals); *S.J. v. New York City Dep't of Educ.*, No. 20-cv-01922, 2020 WL 6151112 (S.D.N.Y. Oct. 20, 2020) (recommending $125 as the hourly rate to be awarded to paralegals), *report and recommendation adopted as modified by* 2021 WL 100501 (S.D.N.Y. Jan. 12, 2021).

However, the Court does not approve of the $275 per hour rate for Ms. Grancio. $225 per hour for associates with similar experience is a more appropriate rate, as a court in this district recently concluded regarding Ms. Grancio. *Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Triangle Enter. NYC, Inc.*, No. 20-cv-793, 2020 WL 2306484, at *6 (S.D.N.Y. May 8, 2020) (reducing Ms. Grancio's rate from $275 to $225); *see also Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Metro. Exposition Servs., Inc.*, No. 19-cv-149, 2019 WL 2004279, at *4 (S.D.N.Y. May 7, 2019) (lowering associate's rate from $275 to $225); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund v. DV I, LLC*, No. 17-cv-7367, 2018 WL 461244, at *5 (S.D.N.Y. Jan. 18, 2018) (holding that $225 per hour is an appropriate rate for "similarly situated" associates); *Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. AMP&G Constr., LLC*, No. 17-cv-4729, 2018 WL 1883450, at *4 (S.D.N.Y. Mar. 29, 2018) (same).

Finally, Petitioners request the reimbursement of $84.63 in court costs resulting from serving Eclipse with the petition to confirm the arbitration award and court fees. Grancio Decl. ¶ 9; Proposed J. at 3. Courts in this district routinely permit the recovery of such costs. *New York City*

*& Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-cv-1115, 2016 WL 3951187, at
*2 (S.D.N.Y. July 19, 2016).

Accordingly, Petitioners' request for attorneys' fees and costs is granted, but with the
reduced rate of $225 per hour for Ms. Grancio's work.  Petitioners are therefore entitled to $2,132 in
attorneys' fees and $84.63 in costs.

## IV.    CONCLUSION

For these reasons, the petition to confirm the arbitration award is GRANTED.  The Clerk
of Court is directed to enter judgment for Petitioners in the amount of $180,957.56, plus
prejudgment interest calculated at 5.25% per annum from April 10, 2021 through the date of
judgment, together with attorneys' fees and costs in the amount of $2,216.63.  Post-judgment
interest shall accrue at the statutory rate pursuant to 28 U.S.C. § 1961 from the date judgment is
entered until payment is made in full.

The Clerk of Court is further directed to close this case.

SO ORDERED.

Dated:  November 26, 2021

_____
GREGORY H. WOODS
United States District Judge